**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

LAURA DWIGHT,                                    :   Case No. 14-cv-6742 (VSB)(AJP)
                                                 :
                              Plaintiff,         :   Hon. Vernon S. Broderick
                                                 :   Hon. Andrew J. Peck
              -against-                          :
                                                 :   ECF CASE
JOHN WILEY & SONS, INC.,                         :
                                                 :   **NOTICE OF**
                              Defendant.         :   **SUPPLEMENTAL AUTHORITY**
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

John Wiley & Sons, Inc. ("Wiley"), through its undersigned counsel, hereby submits as

supplemental authority in further support of its motion for partial summary judgment (Dkt. No.

42), the Report and Recommendation of Magistrate Judge Peck in the sister case *Wu v. John*

*Wiley & Sons, Inc.*, No. 14 Civ. 6746 (AKH) (AJP), Dkt. No. 58 (S.D.N.Y. Sept. 10, 2015).

*First*, the court recommended granting Wiley's motion with respect to claims where the

undisputed evidence showed that the plaintiff's photographs were either not used as alleged or

that the books in question were not actually published. *Id.* at 23-25.  Magistrate Judge Peck

accepted the affidavit testimony of Lisa Suarez on this point, *id.* at 23 & n.17, and found that the

plaintiff offered no evidence to the contrary, *id.* at 24-25.

*Second*, Magistrate Judge Peck recommended granting judgment as to publications made

by Wiley's foreign subsidiaries. *Id.* at 25-30.  The court accepted Suarez's testimony that Wiley

itself did not publish the books in question, and found that the plaintiff identified no

countervailing evidence. *Id.* at 25-26.  Magistrate Judge Peck then rejected the plaintiff's

attempt to shoehorn in a vicarious or contributory infringement theory, noting that the court had

explicitly "denied Wu (*and the other plaintiffs*) permission to amend their complaints to plead a

claim for vicarious copyright infringement."  *Id.* at 27 (emphasis added).

*Third*, the court recommended that Wiley be granted judgment where the plaintiff presented no evidence that Wiley violated its licenses.  *Id.* at 31-32.  It found that Wiley had addressed all possible infringements in its motion.  *Id.*  The court stated that plaintiff's failure to offer evidence to the contrary doomed his claims.  *Id.* at 31 & n.25.

*Fourth*, Magistrate Judge Peck recommended that judgment be granted where Wiley had been unable to find copies of the relevant invoices.  *Id.* at 32-33.  The court found that the plaintiff had made binding judicial admissions in his complaint that licenses were issued for the uses of the photographs in question, and thus bore the burden of demonstrating that Wiley infringed them, a burden he failed to meet.  *Id.* at 33.

*Finally*, the court rejected the plaintiff's argument that the statute of limitations should be tolled.  *Id.* at 14-18.  Magistrate Judge Peck found that the plaintiff "offered no evidence that Wiley's conduct was fraudulent or that Wiley made any material misrepresentations."  *Id.* at 15.

A true and correct copy of the report and recommendation is attached hereto.


Dated: September 17, 2015          Respectfully submitted,


                                  LEVINE SULLIVAN KOCH & SCHULZ, LLP

                                  By*:_____ /s/ Robert Penchina_____*
                                       Robert Penchina
                                       Thomas Curley (*pro hac vice*)
                                       Thomas Sullivan
                                  321 West 44th Street, Suite 1000
                                  New York, NY 10036
                                  Tel. (212) 850-6109
                                  Fax (212) 850-6299
                                  rpenchina@lskslaw.com

                                  *Counsel for John Wiley & Sons, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NORBERT WU,                                    :

                    Plaintiff,                 :           14 Civ. 6746 (AKH) (AJP)

          -against-                            :     **REPORT AND RECOMMENDATION**

JOHN WILEY & SONS, INC.,                       :

                    Defendant.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Alvin K. Hellerstein, United States District Judge:**

        Plaintiff Norbert Wu, a professional photographer who makes his living creating and licensing photographs, brings this copyright infringement action against John Wiley & Sons, Inc., a publishing company specializing in education textbooks.  (Dkt. No. 29: Am. Compl. ¶¶ 1-3.)  Wu alleges that Wiley has engaged in "a systematic pattern of copyright infringement" including publishing his photographs without permission and exceeding the scope of the licenses for Wu's photographs.  (Am. Compl. ¶¶ 13, 28.)

        Presently before the Court is Wiley's summary judgment motion.  (Dkt. No. 37.)  For the reasons set forth below, Wiley's motion should be <u>DENIED</u> in part and <u>GRANTED</u> in part, including that the statute of limitations bars Wu from recovering damages for any acts of copyright infringement that occurred prior to May 16, 2010.

## FACTS

Plaintiff Wu is a professional photographer who makes his living by creating and licensing photographs.  (Dkt. No. 39: Wiley 56.1 Stmt. ¶ 2; Dkt. No. 45: Wu 56.1 Stmt. ¶ 2.) Defendant Wiley is a publisher of textbooks, professional and trade books, and scholarly journals. (Wiley & Wu 56.1 Stmts. ¶ 1.)  Wiley licensed photos for use in its books from Wu and Wu's agents.  (Wiley & Wu 56.1 Stmts. ¶ 3.)

Wu has "'been on high alert for many years about retroactive licensing and [has] heard of many of these cases that publishers have routinely just ignored these [license] restrictions, ignored these licenses that we photographers have granted and just went about business without paying or informing photographers.'"  (Dkt. No. 42: Curley Aff. Ex. B: Wu Dep. at 51-52; Wiley & Wu 56.1 Stmts. ¶ 8.)   As early as January 2009, Wu had received an email from a Colorado copyright lawyer "'regarding legal claims gathered at direction of legal counsel.'"  (Wiley & Wu 56.1 Stmts. ¶ 10.)  As a result, Wu pursued legal claims in July 2009 against a number of textbook publishers who had licensed his photos.  (Wiley & Wu 56.1 Stmts.  ¶¶ 7, 11-12, 14.)  A December 23, 2010 email to Wu from his current attorneys requested that Wu "send any licenses you've granted to Wiley & Sons.  We've got some dirt on them."  (Curley Aff. Ex. D: 12/23/10 Email; Wiley & Wu 56.1 Stmts. ¶ 13.)

On May 16, 2013, Wu and six other photographer sued Wiley for copyright infringement.  (Wiley & Wu 56.1 Stmts. ¶ 4; 13 Civ. 3314, Dkt. No. 1: Compl.)  On March 28, 2014, Judge Swain granted Wiley's motion to sever Wu's claims, dismissing them without prejudice. (See 13 Civ. 3314, Dkt. No. 43: 3/28/14 Order at 10-12, 17.)  On August 20, 2014, Wu filed this lawsuit.  (Wiley & Wu 56.1 Stmts. ¶ 5; Dkt. No. 1: Compl.)  On January 20, 2015, Wu filed his amended complaint.  (Dkt. No. 29: Am. Compl.)  On April 30, 2015, after the close of discovery,

3

Wiley moved for summary judgment.  (Dkt. No. 37.)

Wu claims that Wiley infringed his copyrights in fifteen photographs by engaging in one or more of: "(1) publishing his works without permission, (2) reusing his works in subsequent editions of titles without obtaining a valid license prior to publication, (3) publishing his works prior to obtaining a valid license, (4) printing more copies of publications than authorized by licenses, (5) publishing his works in electronic, ancillary, or derivative publications without permission, (6) publishing his works in foreign editions of publications without permission, and (7) distributing publications containing his works outside the licensed distribution area."  (Wiley & Wu 56.1 Stmts. ¶ 16; see Am. Compl. ¶ 28 & Ex. 1.)

The fifteen photographs at issue are:

a. "Electric Eel"
b. "Viperfish Luring Prey"
c. "Gooseneck Barnacles"
d. "Luminescent Jellyfish"
e. "Australian Wrasse (Cleaner Fish)"
f. "Mature Emperor Fish"
g. "Ctenophore"
h. "Arrow Work"
i. "Scientists Doing An Underwater Transect, Hawaii"
j. "Kissing Fish"
k. "Guano on Rocks"
l. "Flashlight Fish"
m. "Deep Sea Angler Fish Luring A Prey"
n. "Kelp Forest"
o. "Atlantic Longfin Squid"

(Dkt. 39: Wiley & Wu 56.1 Stmts. ¶ 18; see Am. Comp. Ex. 1.)  Wu (or his agents) licensed most of the photographs at issue to Wiley at least a decade ago.  (Wiley & Wu 56.1 Stmts. ¶ 6.)

Specifically, Wu claims that Wiley's use of his photographs in editions of the

4

following textbooks infringed his copyrights:[1] Fundamentals of Physics, Perspectives on Animal Behavior, Biology, Biology Fundamentals, Essentials of Ocean Science, Exploring Ocean Science, Environmental Science, Biology Understanding Life, Biology Understanding Life IRDC, General, Organic & Biological Chemistry, General Organic & Biological Chemistry - An Integrated Approach, Jacaranda Essentials Humanities 2 Worksheets, Jacaranda Primary Atlas, Jacaranda Essentials Geography 1 Worksheets, Microbiology: Principles and Explorations, Visualizing the Environment, Environment, Environment: with 2002 World Population Data Sheet, Package, and Visualizing Environmental Science.  (See Am. Compl. Ex. 1; Curley Aff. Ex. A.)

## ANALYSIS

## I.      SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 533 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v.

---

[1]      Exhibit 1 to Wu's amended complaint lists a total of fifty-five allegedly infringing uses of Wu's fifteen photographs in these textbooks.  (Am. Compl. Ex. 1.)  For ease of reference, Wiley produced a spreadsheet that numbers each of the alleged infringements by which row of Wu's Exhibit 1 they appear in.  (Curley Aff. Ex. A; Wiley 56.1 Stmt. ¶ 18 n.3.)  Wiley "assumes without conceding the infringement alleged in each row was intended to state a separate claim" (Wiley 56.1 Stmt. ¶ 18 n.3), and refers to that numbering order to identify the specific claims on which it seeks summary judgment (see Dkt. No. 38: Wiley Br. at 10-17; Dkt. No. 51: Wiley Reply Br. at 13-17).  Wu does not object to Wiley's numbering scheme, relying on it repeatedly in his opposition papers.  (Dkt. No. 44: Wu Opp. Br. at 16-25.)  The Court therefore also will identify specific claims by reference to the numbered row in which they appear in Wiley's spreadsheet.

5

Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed."  Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2]

---

[2]      See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49
(continued...)

6

The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

## II.    WILEY SHOULD NOT BE GRANTED SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

Wiley argues that all of Wu's claims are barred by the statute of limitations because "by Wu's own admission, he was well aware of the basis for his suit against Wiley for far longer

---

[2/]    (...continued)
(2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

7

than three years prior to the filing of this action" (Dkt. No. 38: Wiley Br. at 7), based on Wu's

deposition testimony that he became aware of Wiley exceeding license limits for his photos "in the

last four or six, eight years" (Dkt. No. 42: Curley Aff. Ex. B: Wu Dep. at 51-53; Wiley Br. at 6-7;

Dkt. Nos. 39 & 45: Wiley & Wu 56.1 Stmts. ¶ 9).  Wiley points to Wu's deposition acknowledgment

that he had "been on high alert for many years" about textbook publishers exceeding the scope of

their licenses because "publishers have routinely just ignored these [license] restrictions, ignored

these licenses that we photographers have granted and just went about business without paying or

informing photographers"  (Wu Dep. at 51-52), and to a December 23, 2010 email from Wu's

counsel stating "[w]e've got some dirt on" Wiley and asking Wu to send them any licenses he had

granted to Wiley (Curley Aff. Ex. D: 12/23/10 Email).

      **A.**      **The Limitations Period For Copyright Claims**

          The Copyright Act imposes a three-year limitations period for infringement claims.

17 U.S.C. § 507(b);[3/] accord, e.g., Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1968-69

(2014) (quoting § 507(b)); Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014)

("Civil actions for copyright infringement must be 'commenced within three years after the claim

accrued.'").  The Second Circuit, like "every Circuit to have considered the issue of claim accrual

in the context of infringement claims," follows the "discovery rule," under which "copyright

infringement claims do not accrue until actual or constructive discovery of the relevant

infringement."  Psihoyos v. John Wiley & Sons, Inc., 748 F.3d at 124-25 & n.3 (collecting cases);

1 Nimmer on Copyright § 12.05[B][2][b] (2014) ("To date, all Courts of Appeals have adopted the

discovery rule . . . ."); 6 Patry on Copyright § 20:19 & n.1 (2013) ("The overwhelming majority of

---

[3/]      Section 507(b) provides: "No civil action shall be maintained under the provisions of this
title unless it is commenced within three years after the claim accrued."

courts use discovery accrual in copyright cases." (citing cases)).

Moreover, according to the Supreme Court:

It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

In sum, Congress provided two controlling time prescriptions: the copyright term, which endures for decades, and may pass from one generation to another; and § 507(b)'s limitations period, which allows plaintiffs during that lengthy term to gain retrospective relief running only three years back from the date the complaint was filed.

Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. at 1969-70 (citations & fns. omitted);[4/] see also,

---

[4/]    Wiley argues that "[n]otwithstanding the Second Circuit's decision in Psihoyos, the subsequent Supreme Court decision in Petrella v. Metro-Goldwyn-Mayer casts doubt on the viability of the discovery rule for copyright infringement claims, as distinct from the traditional 'injury rule.'" (Dkt. No. 38: Wiley Br. at 5 n.5.)  It is true that Petrella "expressly holds open the question of whether the discovery or injury rule is to be preferred."  See 1 Nimmer on Copyright § 12.05[B][2][c] (because courts since Petrella "have had to wend their way through" the "thicket" that results from synthesizing Petrella with the discovery rule, the injury rule "best effectuates sound copyright policy by safeguarding defendants in infringement suits from excessive relief").  Petrella noted that "nine Courts of Appeals have adopted as an alternative to the incident of injury rule, a 'discovery rule,'" but "made no further comment on the issue, thereby purposefully leaving it undecided," Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC, 23 F. Supp. 3d 344, 357 n.11 (S.D.N.Y. 2014) (quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. at 1969 n.4).  "Be that as it may, a suggestion that the Supreme Court may favor the injury rule, without more, does not trump Second Circuit precedent.  For now, Psihoyos remains the law of this Circuit."  Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC, 23 F. Supp. 3d at 357 n.11.

9

e.g., Stone v. Williams, 970 F.2d 1043, 1049-50 (2d Cir. 1992) ("Each act of infringement is a

distinct harm giving rise to an independent claim for relief. . . .  Recovery is allowed only for those

acts occurring within three years of suit, and is disallowed for earlier infringing acts."), cert. denied,

508 U.S. 906, 113 S. Ct. 2331 (1993); 1 Nimmer on Copyright § 12.05[B][1][b] ("If infringement

occurred within three years prior to filing, the action will not be barred even if prior infringements

by the same party as to the same work are barred because they occurred more than three years

previously.").

**B.      The Limitations Period For Wu's Claims Relates Back To His 2013 Lawsuit**

Wiley and Wu disagree about whether the statute of limitations in this suit should be

evaluated based on August 20, 2014, the date Wu filed his complaint in this case (see Dkt. No. 38:

Wiley Br. at 5 & n.4), or relate back to the May 16, 2013 filing of the complaint in the multi-

plaintiff lawsuit from which Wu's claims were dismissed without prejudice (Dkt. No. 44: Wu Opp.

Br. at 6 & n.3).

Dismissal without prejudice generally does not toll the statute of limitations. See,

e.g., In re Palermo, 739 F.3d 99, 105 (2d Cir. 2014) ("a suit dismissed without prejudice . . . 'is

treated for statute of limitations purposes as if it had never been filed'"); Johnson v. Nyack Hospital,

86 F.3d 8, 11 (2d Cir. 1996) ("[W]here the action has been dismissed without prejudice, a plaintiff's

subsequent court filing is vulnerable to a time-bar because the dismissal in and of itself does not halt

the running of the limitations period, even though designated to be without prejudice.").[5]

Judge Swain dismissed Wu's claims from the 2013 lawsuit in response to Wiley's

---

[5]      See also, e.g., Guo v. IBM 401(k) Plus Plan, 13 Civ. 8223, --- F. Supp. 3d ----, 2015 WL
1379788 at *10 (S.D.N.Y. Mar. 26, 2015) ("When a case is dismissed without prejudice,
however, the statute of limitations is not automatically tolled."); Wang v. Palmisano, 51 F.
Supp. 3d 531, 531-32 (S.D.N.Y. 2014).

10

motion to sever under Federal Rule of Civil Procedure 21.  (13 Civ. 3314, Dkt. No. 43: 3/28/14

Order at 10-12, 17.)  Although Judge Swain stated that Wu's (and others') claims "are dismissed

without prejudice" (id. at 17), the opinion as a whole demonstrates that Judge Swain intended to

effect a severance and allow those plaintiffs whose claims were severed to be able to assert them in

separate actions (see id. at 10-12).  Because treating Judge Swain's order as a dismissal without

prejudice would undermine that purpose, the Court deems Wu's claim to have been severed pursuant

to Fed. R. Civ. P. 21, with the statute of limitations held in abeyance.  See, e.g., Fed. R. Civ. P. 21

("Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court

may at any time, on just terms, add or drop a party."); In re Palermo, 739 F.3d at 104-05

(Bankruptcy Rule 7021, the parallel to Fed. R. Civ. P. 21 , provided "a clearly sufficient basis" to

affirm district court decision tolling statute of limitations in new lawsuit after bankruptcy court

required plaintiff to dismiss claims against defendant in the original suit because the "record

unequivocally reflects that what the bankruptcy court intended to do was to effectuate a severance"

and Rule 21 "indicates that '[m]isjoinder of parties is not a ground for dismissing an action.'"); see

also, e.g., DirecTV, Inc. v. Leto, 467 F.3d 842, 846 (3d Cir. 2006) ("Even if the language of the

District Court's 2003 order had not clearly severed [plaintiff's] claim against [defendant], it

nonetheless would have been improper for the Court to choose dismissal instead, as this misjoinder

remedy would have imposed adverse statute-of-limitations consequences on [plaintiff].  Although

a district court has discretion to choose either severance or dismissal in remedying misjoinder, it is

permitted under Rule 21 to opt for the latter only if  'just'–that is, if doing so 'will not prejudice any

substantial right.'").[6]

---

[6]     Because the Court deems Wu's claims to have been severed by Judge Swain's order, and
                                                                        (continued...)

Wu's complaint in this case therefore relates back to May 16, 2013, when the multi-plaintiff case before Judge Swain was filed.  (13 Civ. 3314, Dkt. No. 1: Compl.; Dkt. Nos. 39 & 45: Wiley & Wu 56.1 Stmts. ¶ 4.)

### C.      Wu's Claims Are Timely, But He Can Recovery Damages Only For Infringements That Occurred After May 16, 2010

A plaintiff claiming copyright infringement has three years from the date their claim accrues to sue, and may recover "retrospective relief running only three years back from the date the complaint was filed." Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1969, 1969 (2014); see also cases cited at pages 8-9 above.  A plaintiff's claim accrues upon actual or constructive discovery of the alleged infringement.  See cases cited at pages 7-8 above.

Wu testified at his January 2015 deposition that he became aware of textbook publishers generally exceeding licenses "eight to ten years ago maybe.  Maybe six." (Dkt. No. 42: Curley Aff. Ex. B: Wu Dep. at 53), and identified a lawyer in Colorado as the source of this knowledge (Wu Dep. at 53-54).  Thus, Wu was, as he put it, "on high alert" (Wu Dep. at 51) for potential infringements of the exact kind alleged in this case by textbook publishers in general beginning well outside the limitations period.  Wu's knowledge about publishers generally is not sufficient to constitute constructive discovery of infringement by Wiley.  See, e.g., Domenikos v. Roth, 288 F. App'x 718, 719-20 (2d Cir. 2008) ("Inquiry notice—often called storm warnings in the securities context—gives rise to a duty of inquiry when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded.  Storm warnings in the

---

[6/]      (...continued)
does not address whether the statute of limitations should have been equitably tolled, it is not necessary to address the question of whether the approximately five-month delay between the dismissal of Wu's claims and his filing the current lawsuit was unreasonably long.

12

form of company-specific information probative of fraud will trigger a duty to investigate."
(quotations & citations omitted)); Frerck v. John Wiley & Sons, Inc., No. 11-cv-2727, 2014 WL
3512991 at *6 (N.D. Ill. July 14, 2014) ("Defendant claims that Plaintiff should have seen articles
generally describing textbook publishers' copyright infringements of photographers' images and that
such articles constitute 'storm warnings' triggering a duty to investigate Defendant's use of his work.
. . . [A]n article identifying an issue in the publishing industry generally did not obligate Plaintiff
to go through 19 years of licenses to preserve his copyright infringement claims. If that were the
expectation, then stock photo agencies and photographers likely would spend more money
monitoring their licenses than they receive from issuing licenses."); Design Basics, LLC v. Chelsea
Lumber Co., 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) ("The Court . . . rejects Defendants'
argument that Plaintiff was under a continuous duty to police its copyright and concludes that
Defendants have not pointed to evidence of any storm warnings that would reasonably have put
Plaintiff on inquiry notice of the claimed infringement more than three years prior to filing suit.");
Bean v. John Wiley & Sons, Inc., No. 11-cv-8028, 2012 WL 1078662 at *3 (D. Ariz. Mar. 30, 2012)
("We are not persuaded that there is an issue of fact as to whether plaintiff's lawsuit against [a non-
defendant publisher] provided him with enough information to sue defendant in 2007. Although
defendant complains that plaintiff's general allegations that textbook publishers systemically
exceeded licenses means that he 'sued Wiley in 2011 with no more personal knowledge than he had
in 2007,' defendant does not present any evidence from which we can reasonably infer that plaintiff's
knowledge of [the non-defendant publisher's] infringement alerted or should have alerted him to
evidence that defendant was exceeding its licenses." (record citation omitted)).

Wu further testified that he became aware of Wiley exceeding license limits for his
photos "in the last four or six, eight years" (Wu Dep. at 52) and later "four, maybe six years ago"

(Wu Dep. at 53).  The timing Wu testified to corresponds with his December 23, 2010 receipt of an email from his present counsel advising Wu to "send us any licenses you've granted to Wiley & Sons.  We've got some dirt on them."  (See page 2 above.)[7/]  Wu concedes that while he referred at deposition to four or six years ago, "the record shows it was December 23, 2010."  (Wu Opp. Br. at 5, citing Curley Aff. Ex. D.)[8/]  Wu's cause of action therefore accrued on December 23, 2010. Because Wu's complaint in this case relates back to the complaint in the 2013 litigation, which was filed May 16, 2013 (see part II.B. above), Wu sued more than six months before the statute of limitations for his claims would have expired on December 23, 2013, and thus his complaint was timely filed.  Following Petrella, Wu can recover damages only for any Wiley infringing acts that occurred on or after May 16, 2010.[9/]

---

[7/]   Wu's claim that "Wiley has lost its previous efforts to impute such knowledge from counsel to claimants on the same facts" (Dkt. No. 44: Wu Opp. Br. at 6, citing Bean v. John Wiley & Sons, Inc.), is mistaken because in that case the "defendant [did] not present any evidence from which [the court could] reasonably infer that plaintiff's knowledge of [a non-defendant publisher's] infringement alerted or should have alerted him to evidence that defendant was exceeding its licenses," and the plaintiff "testified that around the time he initiated litigation against [the non-defendant publisher], he was not suspicious that other textbook publishers were exceeding his licenses," Bean v. John Wiley & Sons, Inc., 2012 WL 1078662 at *2 (emphasis added).  And as to imputing information from counsel, the Bean court found that information that counsel obtained representing a different client, and designated "attorney's eyes only," could not be imputed to Bean.  Id. at *3.

[8/]   Wu's testimony that he became aware of Wiley's alleged infringements four, six, or even eight years ago is too vague by itself to support granting Wiley summary judgment that Wu actually or constructively discovered the particular alleged infringements more than four years ago.  The December 2010 email from Wu's counsel, however, establishes a date upon which Wu clearly was alerted to the possibility of license violation by Wiley in particular, as opposed to by other textbook publishers.

[9/]   Curiously, Wiley concedes that it does not seek "any assessment of when any infringements by Wiley commenced."  (Dkt. No. 51: Wiley Reply Br. at 8 n.6.)  Instead, because "the statute of limitations operates to limit the affected claims," Wiley "seeks a ruling, as a matter of law, that because Wu learned, or should as a reasonable person have learned, that Wiley

(continued...)

14

**D.     Wu's Tolling Arguments Are Moot And In Any Event Without Merit**

Because this Court has found Wu's complaint timely, Wu's arguments for tolling the statute of limitations are moot.  See, e.g. Garcia v. Smith, No. 11-CV-1332, 2014 WL 905544 at *7 (E.D.N.Y. Mar. 7, 2014).  In any event, they lack merit.

Wu asserts that the statute of limitations should be tolled because "he did not have access to the information necessary to determine whether a violation occurred" prior to filing suit against Wiley because "[i]nformation regarding Wiley's use of [his] photos (such as print run totals for each book) is not public information."  (Dkt. No. 44: Wu Opp. Br. at 7-8.)  According to Wu, "Wiley's infringements are inherently self-concealing acts and thus the statute of limitations must be tolled" and because Wu "lacked access" to "crucial information" about Wiley's sales, print run totals, and sales territories, he "could not have determined whether Wiley violated a particular license." (Wu Opp. Br. at 8.)[10]

Wu has identified no cases in the copyright context that support his position, instead

---

[9]     (...continued)
was allegedly violating his rights prior to August 20, 2011, Wu is time-barred from recovering damages with regard to any unauthorized printings or distributions of his photos that occurred prior to this date." (Wiley Reply Br. at 8 n.6.)  Because the Court has found a different discovery date and a different date for commencement of the action, and because Wiley has not presented argument as to when particular alleged infringements occurred, the Court cannot grant summary judgment dismissing any specific claims of infringement on limitations grounds.

[10]     Wu also complains that "where his claims relate to licenses issued by third-party licensors," he "received only a periodic royalty statement listing license fees but never received the underlying license and [the] statements did not identify the books or include any terms of the licenses." (Wu Opp. Br. at 8.)  Wu asserts that  "[w]ithout information regarding book names or license terms, [he] could not possibly have known whether Wiley violated its licenses" (Wu Opp. Br. at 8), but offers no explanation why he could not have obtained that information from his third-party licensors.  If he failed to require that in his arrangements with the licensors, he only has himself to blame.

15

relying on cases dealing with allegedly self-concealing acts in other contexts, including fraudulent

concealment and material misrepresentations in ERISA disputes.  (See Wu Opp. Br. at 8-9, citing

Caputo v. Pfizer, Inc., 267 F.3d 181, 189 (2d Cir. 2001); N.Y. v. Hendrickson Bros., Inc., 840 F.2d

1065, 1083 (2d Cir.), cert. denied, 488 U.S. 848, 109 S. Ct. 128 (1988); Bethlehem Steel Corp. v.

Fischbach & Moore, Inc., 641 F. Supp. 271, 274 (E.D. Pa. 1986).)[11]  While fraudulent concealment

can be an appropriate ground for tolling the statute of limitations in a copyright case, see, e.g.

Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. at 1975 & n.17, Wu has offered no evidence that

Wiley's conduct was fraudulent or that Wiley made any material misrepresentations.[12]

---

[11]     Indeed, existing Southern District precedent has refused to treat copyright infringement
claims as inherently self-concealing.  (See John Wiley & Sons, Inc. v. DRK Photo, 998 F.
Supp. 2d 262, 286 (S.D.N.Y. 2014); Urbont v. Sony Music Entm't, 863 F. Supp. 2d 279, 285
(S.D.N.Y. 2012) ("In stark contrast to claims of fraud, latent disease, or medical malpractice,
acts of copyright infringement are not 'inherently self-concealing' but rather are open and
notorious in nature.").  Notwithstanding that those cases predate Psihoyos and apply the
injury rule rather than the discovery rule to determine when a copyright infringement claim
accrues, the fact remains that the Court's research has not found any case in this District that
found a copyright infringement claim to be inherently self-concealing.

[12]     Wu also argues that "Wiley refused to cooperate with Wu's pre-suit inquiries," and  "Wiley's
refusal to cooperate with Wu's inquiry and efforts to conceal information require tolling the
statute of limitations."  (Wu Opp. Br. at 9-10.)  Wu has presented no evidence that Wiley
ever agreed to an audit of its use of Wu's photographs, and a copyright owner does not have
an inherent right to audit a licensee.  (See 13 Civ. 3314, Dkt. No. 43: 3/28/14 Order at 13-14,
quoting Young-Wolff v. McGraw-Hill Cos., 13 Civ. 4372, 2014 WL 349711 at *6 (S.D.N.Y.
Jan. 31, 2014) ("Plaintiff points to neither case law nor language in the Copyright Act
indicating that a copyright owner has an inherent right to sue a licensee for an audit."); 13
Civ. 2891, Dkt. No. 17: 8/13/13 Hearing Tr. at 41 (Judge Daniels told plaintiff's current
counsel that: "I am not aware of any case law, any language in the Copyright Act, or any
legitimate legal theory that gives the copyright owner an inherent right to audit everybody
who is licensed by others to use her photograph."); see also id. at 47-50 ("An audit is a
contractual right; it is not a copyright right.").)  The consequence of accepting Wu's
argument, however, effectively would be to grant him an audit right he did not bargain for
in his licenses to Wiley.  Moreover, since there is no right to an audit without a contractual
provision, Wu's argument about Wiley's alleged failure to cooperate would permanently
delay the commencement of the statute of limitations, that is, it would eliminate any statute
(continued...)

16

Wu also argues that "Wiley's statute of limitations defense fails because Wiley itself was not aware of the violations at issue here until 2011 or later." (Wu Opp. Br. at 10.) According to Wu, "[a]t least one court has held in an identical infringement action that even where a plaintiff received repeated and direct admissions of license violations, the statute of limitations is tolled, even under the 'inquiry notice' standard, where the publisher itself 'was unaware of the extent of its license overruns' and its records 'were not well organized' because these factors indicate 'that any questions or objections by an author or photographer . . . would not have resulted in any concrete information' from the publisher." (Wu Opp. Br. at 10, quoting Grant Heilman Photography, Inc. v. McGraw-Hill Global Educ. Holdings, LLC, No. 12-2061, 2015 WL 1279502 at *18 (E.D. Pa. Mar. 20, 2015.).) Wu misstates the holding of Grant Heilman Photography, Inc. The court there refused to overturn a jury verdict and grant judgment as a matter of law that the statute of limitations was not tolled, finding that "[i]f McGraw-Hill was unaware of the license overruns until 2013, the jury may have concluded that it could not find that [plaintiff stock photo agency] was on inquiry notice of those

---

12/      (...continued)
of limitations until the copyright owner decided to sue.

Wu also claims that Wiley agreed to toll the statute of limitations as of February 1, 2011 (Wu Opp. Br. at 10), based on a June 2011 email from Wiley's general counsel stating "we will agree to toll the statute of limitations from the date on which you first contacted us with respect to a particular client until the date on which we provide you with the agreed information" (Dkt. No. 47: Nelson Aff. ¶ 15 & Ex. 13: 6/29/11 Aggarwal Email). That email, however, was part of an ongoing discussion about the terms of a potential non-disclosure agreement ("NDA"), including about whether a tolling provision would be incorporated into any agreement. (See Nelson Aff. ¶ 16 & Ex. 14: 7/7/11 Email Correspondence & Draft NDA.) A subsequent, unexecuted draft NDA from July 2011 (Nelson Aff. ¶ 25 & Ex. 23: Draft NDA), and emails from August 2011 (Nelson Aff. Ex. 24: 8/25/11 McCulloch Email ("We hereby demand that Wiley . . . submit to a tolling agreement")), make clear that no such agreement had been reached months after Wu claims Wiley agreed to toll the statute of limitations. In any event, because the Court has found that Wu was not on notice for discovery purposes until December 23, 2010 and his complaint is deemed filed on May 16, 2013, there is no need to toll the statute of limitations.

17

infringements before April 18, 2009," while stating that if the court "were to evaluate the testimony of [plaintiff's president] in isolation, the Court would likely agree with McGraw-Hill that the evidence showed [plaintiff] was on inquiry notice." Grant Heilman Photography, Inc. v. McGraw-Hill Global Educ. Holdings, LLC, 2015 WL 1279502 at *1, 18.  The court also noted that even though it "must give substantial weight to the jury's verdict," the decision nonetheless was "a very close question."  Id. at *1, 20.

In any event, Wu concedes that at the time he filed his initial lawsuit in 2013, he lacked the information he now claims was necessary for him to be on notice of Wiley's purported license overruns.  (See Wu Opp. Br. at 8 n.6.)  Yet lack of that information did not prevent Wu from filing a complaint sufficient to survive a motion to dismiss on the merits.  (See 13 Civ. 3314, Dkt. No. 43: 3/28/14 Order at 9-12 (denying Wiley's motion to dismiss on the merits for those photographs identified in exhibits to the complaint and dismissing, inter alia, Wu's claims without prejudice on the basis of misjoinder).

Finally, Wu asserts that Wiley "must forfeit its statute of limitations defense because it refused to provide discovery pertaining to its own investigations concerning [Wu's claims] on the basis of privilege." (Wu Opp. Br. at 11-12.)  This argument is without merit.  Wu asserts that "[t]he Court explicitly cautioned Wiley that asserting privilege may forfeit defenses that put its investigation in issue," during a March 31, 2015 telephonic conference (Wu Opp. Br. at 11 n.9; see also Dkt. No. 47: Nelson Aff. ¶ 60 & Ex. 52 at 240-42), but concedes that "the Court was addressing willfulness defenses at the time" rather than the statute of limitations (Wu Opp. Br. at 11 n.9).  The issue for statute of limitations purposes was what Wu and his counsel knew, not what Wiley knew (or what it claimed was privileged knowledge).

In summary, Wu's complaint is timely, his arguments for tolling are both moot and

18

without merit, and he can recover damages only for any Wiley infringing acts after May 16, 2010.

**III.   WU HAS EITHER FULFILLED THE COPYRIGHT ACT'S REGISTRATION REQUIREMENT OR RAISED A TRIABLE ISSUE OF FACT FOR ALL OF THE PHOTOGRAPHS WHOSE REGISTRATIONS WILEY CHALLENGES**

    **A.    The Registration Requirement**

        The Copyright Act requires registration as a precondition to the filing of a lawsuit alleging copyright infringement.  17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); see, e.g., Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166, 130 S. Ct. 1237, 1247 (2010) ("Section 411(a) imposes a precondition for filing a claim . . . .").[13]

    **B.    Wiley Should Not Be Granted Summary Judgment Based On The Timing Of Wu's Copyright Registrations**

        Wiley argues that the registrations were untimely for three of Wu's photographs: "Australian Wrasse (Cleaner Fish)," "Mature Emperor Fish," and "Guano on Rocks."  (Dkt. No. 38: Wiley Br. at 8-9.)  Wu obtained his registrations for those three photographs on Dec. 9, 2014, several months after the August 20, 2014 filing of this lawsuit.  (See Dkt. No. 42: Curley Aff. Ex. G: Copyright Registrations (all dated Dec. 9, 2014).)[14]

---

[13]    See also, e.g., Newton v. Penguin/Berkeley Pub. USA, 13 Civ. 1283, 2014 WL 61232 at *4 (S.D.N.Y. Jan. 6, 2014) ("The Supreme Court has held that [Section 411(a)] imposes a 'precondition' to filing a claim for copyright infringement."); Patrick Collins, Inc. v. John Does 1-7, 12 Civ. 2963, 2012 WL 1889766 at *1 (S.D.N.Y. May 24, 2012) ("A claim for copyright infringement requires a copyright holder to first register its work before filing suit."); Kamanou v. Exec. Sec'y of Comm'n of the Econ. Cmty. of W. African States, 10 Civ. 7286, 2012 WL 162708 at *6 (S.D.N.Y. Jan. 19, 2012), report & rec. adopted, 2012 WL 868700 (S.D.N.Y. Mar. 14, 2012).

[14]    Wu's original complaint in this case alleges that Wu had registered all of the photographs at
(continued...)

19

The Second Circuit has held that summary judgment may be proper where a plaintiff has "not even filed the applications for registration of the relevant works prior to instituting the action claiming infringement." Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 125 (2d Cir. 2014) (emphasis added). Wiley argues that Psihoyos requires dismissal of Wu's claims relating to those three photographs because Wu did not obtain registration prior to instituting his lawsuit. (Wiley Br. at 8-9.) This argument is unpersuasive. In Psihoyos, the Second Circuit did not hold that summary judgment dismissing the plaintiff's infringement claims was required; instead, it affirmed that the District Court did not violate its "wide discretion" by denying the plaintiff leave to amend his complaint to assert those claims because the plaintiff waited until after the close of discovery and the filing of a summary judgment motion to even submit his applications to the Copyright Office. See Psihoyos v. John Wiley & Sons, Inc., 748 F.3d at 125-26.

In contrast, Wu successfully registered the three photos at issue in December 2014, while discovery was ongoing in this case (see page 18 above), and filed an amended complaint on January 20, 2015 (see Dkt. No. 29: Am. Compl.). Although the Court could have dismissed Wu's claims based on the "Australian Wrasse (Cleaner Fish)," "Mature Emperor Fish," and "Guano on Rocks" photos without prejudice at that point, it equally was within the Court's discretion to permit amendment of the complaint. See, e.g., Laine v. Pride, 08 Civ. 3057, 2010 WL 199927 at *4

---

[14]/   (...continued)
    issue in this case. (See Dkt. No. 1: Compl. ¶¶ 33-35.) Wu denies that he failed to register these photographs prior to filing this lawsuit, apparently because their titles are similar to other photographs that he previously had registered. (See Dkt. No. 44: Wu Opp. Br. at 12-13; Dkt. No. 45: Wu 56.1 Stmt. ¶ 34.) Wu admitted at his deposition that not all actually were registered by August 20, 2014, the date Wu filed this lawsuit. (See Dkt. No. 53: Curley Reply Aff. Ex. O: Wu Dep. at 135 ("Q: Just to be clear, on August 20 of 2014, when this complaint was submitted, it was not true that all of the photos in this case were registered? A: That's correct.")

20

(S.D.N.Y. Jan. 19, 2010) ("[W]here a plaintiff files an infringement suit prior to registration of the copyright at issue, district courts have discretion to allow a plaintiff to amend their complaint if they obtain registration after the suit's initiation."); J. Racenstein & Co. v. Wallace, 96 Civ. 9222, 1997 WL 605107 *1 (S.D.N.Y. Oct. 1, 1997) ("Where an action is commenced without registration being effected, the defect can be cured by subsequent registration, and an appropriate amendment to the complaint may be made to provide the necessary basis for subject matter jurisdiction."); Computer Assocs. Int'l, Inc. v. Altai, Inc., 775 F. Supp. 554, 557 (E.D.N.Y. 1991) , aff'd in relevant part, 982 F.2d 693 (2d Cir. 1992); Demetriades v. Kaufmann, 680 F. Supp. 658, 661 (S.D.N.Y. 1988).

Wu's filing of the amended complaint after obtaining copyright registrations cured any deficiency from the lack of registration before the original complaint.

**C.    There Is A Factual Dispute Regarding Whether Wu's Photograph "Electric Eel" Is Registered**

Wiley argues that Wu's claims related to the photograph "Electric Eel" should be dismissed because Wu failed to prove that the photograph is registered.  (Dkt. No. 38: Wiley Br. at 9-10.)  Wiley claims Wu testified at deposition that the photograph "should be contained on a video he submitted along with his registration application to the Copyright Office more than twenty years ago" but "did not know whether the photo was actually submitted in that video, as would be required to obtain a registration for it," and further asserts that "[i]nsofar as can be determined, the video Wu submitted to the Copyright Office does not in fact contain a photo identified as 'AQR 0013.'"  (Wiley Br. at 10.)  According to Wu's affidavit testimony, the photograph "Electric Eel" bears his identification number AQR0013 and is registered under copyright registration number VAu 283-085.  (Dkt. No. 46: McCulloch Aff. Ex. 2: Wu 1/15/15 Aff. ¶¶ 1-2 & Ex. 1.)  This is consistent with Wu's personal registration records, which state that he registered a photograph of an electric eel

under the identification number AQR0013 on October 21, 1993 under copyright registration number

VAu 283-085.  (McCulloch Aff. ¶ 5 & Ex. 3: Registration Records.)  Wu also has submitted a screen

capture from a deposit video dated January 1, 1992 which shows a photograph entitled "AQR13,

electric eel."  (McCulloch Aff. ¶ 6 & Ex. 4: Screen Capture.)

"If, as to the issue on which summary judgment is sought, there is any evidence in

the record from any source from which a reasonable inference could be drawn in favor of the

nonmoving party, summary judgment is improper."  <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d

29, 37 (2d Cir. 1994); <u>see</u> cases cited at pages 5-6 above.  There is a factual dispute whether Wu

included "Electric Eel" with the application that became registration VAu 283-085, and so Wiley's

summary judgment motion as to registration of the photograph "Electric Eel" should be denied.

## IV.    CLAIMS WHERE WILEY SHOULD BE GRANTED SUMMARY JUDGMENT

### A.    Legal Standard

"To survive a motion for summary judgment in a copyright infringement case, the

plaintiff must present evidence that shows '(i) ownership of a valid copyright; and (ii) unauthorized

copying of the copyrighted work.'"  <u>Webb</u> v. <u>Stallone</u>, 555 F. App'x 31, 31 (2d Cir. 2014) (quoting

<u>Jorgensen</u> v. <u>Epic/Sony Records</u>, 351 F.3d 46, 51 (2d Cir. 2003)).[15]  "'To satisfy the second element

of an infringement claim . . . a plaintiff must show both that his work was "actually copied " and that

_____

[15]    <u>Accord</u>, <u>e.g.</u>, <u>Wager</u> v. <u>Littell</u>, 549 F. App'x 32, 33 (2d Cir. 2014); <u>Arista Records, LLC</u> v.
<u>Doe 3</u>, 604 F.3d 110, 117 (2d Cir. 2010) (quoting <u>Feist Publ'ns, Inc.</u> v. <u>Rural Tel. Serv. Co.</u>,
499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991)); <u>Crown Awards, Inc.</u> v. <u>Discount Trophy</u>
<u>& Co.</u>, 326 F. App'x 575, 576 (2d Cir. 2009) ("To prevail on a claim of copyright
infringement, a plaintiff must demonstrate both ownership of a valid copyright and
infringement."); <u>Int'l Diamond Imp., Inc.</u> v. <u>Oriental Gemco (N.Y.), Inc.</u>, 64 F. Supp. 3d 494,
510 (S.D.N.Y. 2014); 4 Nimmer on Copyright § 13.01 ("Reduced to most fundamental
terms, there are only two elements necessary to the plaintiff's case in an infringement action:
ownership of the copyright by the plaintiff and copying by the defendant." (fns. omitted)).

the portion copied amounts to an "improper or unlawful appropriation."'" <u>Webb</u> v. <u>Stallone</u>, 555 F.

App'x at 31 (quoting <u>Jorgensen</u> v. <u>Epic/Sony Records</u>, 351 F.3d at 51).[16]

"A claim for infringement will fail if the challenged use of the copyrighted work is

authorized by a license." <u>Wu</u> v. <u>Pearson Educ. Inc.</u>, 10 Civ. 6537, 2013 WL 145666 at *4 (S.D.N.Y.

Jan. 11, 2013) (citing <u>Graham</u> v. <u>James</u>, 144 F.3d 229, 236 (2d Cir. 1998)); <u>see also</u>, <u>e.g.</u> <u>Davis</u> v.

<u>Blige</u>, 505 F.3d 90, 100 (2d Cir. 2007) ("A valid license . . . immunizes the licensee from a charge

of copyright infringement, provided that the licensee uses the copyright as agreed with the

licensor."), <u>cert. denied</u>, 555 U.S. 822, 129 S. Ct. 117 (2008); <u>Spinelli</u> v. <u>Nat'l Football League</u>, ---

F. Supp. 3d ----, 13 Civ. 7398, 2015 WL 1433370 at *36 (S.D.N.Y. Mar. 27, 2015) ("[I]t is well

established that use of a copyrighted work within the scope of a valid license is non-infringing as

a matter of law"); <u>John Wiley & Sons, Inc.</u> v. <u>DRK Photo</u>, 998 F. Supp. 2d 262, 277 (S.D.N.Y.

2014); 4 Nimmer on Copyright § 13.04.

"Where 'only the scope of the license is at issue, the copyright owner bears the burden

of proving that the defendant's copying was unauthorized.'" <u>Wu</u> v. <u>Pearson Educ. Inc.</u>, 2013 WL

145666 at *5 (quoting <u>Bourne</u> v. <u>Walt Disney Co.</u>, 68 F.3d 621, 631 (2d Cir. 1995), <u>cert. denied</u>, 517

U.S. 1240, 116 S. Ct. 1890 (1996)); <u>see also</u>, <u>e.g.</u>, Tasini v. New York Times Co., 206 F.3d 161, 171

(2d Cir. 2000), aff'd, 533 U.S. 483, 121 S. Ct. 425 (2001); <u>Psihoyos</u> v. <u>Pearson Educ., Inc.</u>, 855 F.

Supp. 2d 103, 119 n. 8 (S.D.N.Y. 2012); <u>Elsevier B.V.</u> v. <u>UnitedHealth Grp., Inc.</u>, 784 F. Supp. 2d

286, 294 (S.D.N.Y. 2011); <u>SimplexGrinnell LP</u> v. <u>Integrated Sys. & Power, Inc.</u>, 642 F. Supp. 2d

167, 187 (S.D.N.Y.), <u>modified on other grounds</u>, 642 F. Supp. 2d 206 (2009).

---

[16]   <u>Accord</u>, <u>e.g.</u>, <u>Wager</u> v. <u>Littell</u>, 549 F. App'x at 33; <u>Maharam</u> v. <u>Patterson</u>, 369 F. App'x 240,
241 (2d Cir. 2010), <u>cert. denied</u>, 562 U.S. 1135, 131 S. Ct. 904 (2011); <u>Mayimba Music,
Inc.</u> v. <u>Sony Corp. of Am.</u>, 12 Civ. 1094, 2014 WL 5334698 at *14 (S.D.N.Y. Aug. 19,
2014) (Hellerstein, D.J.); 4 Nimmer on Copyright § 13.01[B]; 3 Patry on Copyright § 9:16.

**B.    Wu Has Failed To Provide Evidence That Wiley Used His Photographs In Many Of The Books Alleged**

Wiley argues that "the undisputed evidentiary record demonstrates that Wiley did not" make the allegedly infringing uses of several of Wu's photos because either the books in which Wu claims the photos appeared were never published or the photos were not used in them.  (Dkt. No. 38: Wiley Br. at 11-13.)

Wiley should be granted summary judgment on Wu's claim regarding the use of the photo "Electric Eel" in <u>Physics</u> (5th ed., vol. 1).  (Dkt. No. 42: Curley Aff. Ex. A, Row 2.) According to Lisa Suarez, Wiley's Senior Manager of Inventory in the Global Operations Department, the image "Electric Eel" does not appear in that book.  (Dkt. No. 40: Suarez Aff. ¶¶ 1, 3.)[17/]  Similarly, a usage report from Wiley's Global Permissing System shows that the use of

---

[17/]    Wu asserts that Suarez's affidavit is not "admissible evidence because neither Defendant nor its proposed witness has provided the original records that supposedly were reviewed or relied upon" and asserts that Suarez's statements are "not based on personal knowledge." (Dkt. No. 45: Wu 56.1 Stmt. ¶¶ 19-23, 26-30.)  Wu further objects to Suarez's affidavit because Suarez "also does not identify or authenticate the alleged business records or even describe the process or system used to ensure that an accurate result would be produced." (Wu 56.1 Stmt. ¶ 19.)

Rule 56(c)(4) requires that "[a]n affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge. <u>See</u>, <u>e.g.</u>, <u>DiStiso</u> v. <u>Cook</u>, 691 F.3d 226, 230 (2d Cir. 2012) ("[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'"); <u>Bernstein</u> v. <u>Vill. of Wesley Hills</u>, --- F. Supp. 3d ----, 08 Civ. 156, 2015 WL 1399993 at * 9 (S.D.N.Y. Mar. 27, 2015); <u>Brown</u> v. <u>Northrop Grumman Corp.</u>, No. 12-CV-1488, 2014 WL 4175795 at *1 (E.D.N.Y. Aug. 19, 2014); <u>Serrano</u> v. <u>Cablevision  Sys. Corp.</u>, 863 F. Supp. 2d 157, 163 (E.D.N.Y. 2012). Moreover, a witness "may testify as to the contents of records she reviewed in her official capacity." <u>Arneauld</u> v. <u>Pentair, Inc.</u>, No. 11-CV-3891, 2012 WL 5932956 at *14 (E.D.N.Y. Nov. 26, 2012);  <u>see also</u>, <u>e.g.</u>, <u>Capitol Records, LLC</u> v. <u>Vimeo, LLC</u>, 972 F. Supp. 2d 500,

(continued...)

"Electric Eel" photo in Physics (5th ed., vol. 1) was "[c]ancelled" and "[n]ot used." (Dkt. No. 46: McCulloch Aff. ¶ 14 & Ex. 12: Global Permissioning System ("GPS") Report.)  Wu argues that an Asset Detail Report produced by Wiley during discovery demonstrates that "Electric Eel" was used as a chapter opener in "Physics 5e, Vol. 1" (Wu 56.1 Stmt. ¶ 78; see also McCulloch Aff. Ex. 5: Asset Detail Report), but Wu is mistaken: that Asset Detail Report relates to a different book, Fundamentals of Physics (5th ed.).  Moreover, Wiley is correct that "[t]he use cited in Fundamental of Physics 5th Edition is separately alleged in Plaintiff's own Complaint." (Dkt. No. 52: Wiley 56.1 Counter-Stmt. ¶ 78; compare Curley Aff. Ex. A, Row 2 with Row 3.)[18]  Because Wu has the burden of proof (see cases cited at page 5 above) and has produced no evidence to suggest that Wiley published "Electric Eel" in Physics (5th ed., vol. 1), Wiley should be granted summary judgment on that claim, i.e., Curley Aff. Ex. A, Row 2.

Wiley similarly should be granted judgment on Wu's claims relating to the use of the photos "Australian Wrasse (Cleaner Fish)" in Biology Fundamentals (1st ed.) (Curley Aff. Ex. A, Row 14), "Deep Sea Angler Luring A Prey" in Microbiology Principles and Explorations (6th ed.) (Curley Aff. Ex. A, Row 46), and "Atlantic Longfin Squid" in Visualizing the Environment (3d ed.)

---

[17]     (...continued)
508 & n.7 (S.D.N.Y.), amended on other grounds, 972 F. Supp. 2d 500 (2013); Bank of America, N. A. v. Kamico, Inc., 11 Civ. 5255, 2012 WL 1449185 at *6 (S.D.N.Y. Apr. 24, 2012); Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000).

Suarez's affidavit is based on her personal review of Wiley documents, produced to Wu in discovery, that reflect "the most complete and current data as to the print run, format of distribution, and geographic area of distribution by Wiley for the publications at issue in this case" (Suarez Aff. ¶ 2), as well as of the publications at issue and Wiley's business records (Suarez Aff. ¶¶ 3-14).  Suarez's affidavit is admissible.

[18]     Wiley is not seeking summary judgment on Wu's claim regarding the use of "Electric Eel" in Fundamentals of Physics (5th ed.).  (See generally Wiley Br.; Dkt. No. 51: Wiley Reply Br.; see Curley Aff. Ex. A, Row 3.)

25

(Curley Aff. Ex. A, Rows 54 & 55).  Suarez has testified that none of these photographs appears in the publications alleged.  (Suarez Aff. ¶¶ 4-6.)  Wu has offered no evidence to the contrary. (See Wu 56.1 Stmt.  ¶¶ 19-20.)

Finally, Wiley is entitled to summary judgment with respect to Wu's claim that it violated his copyrights in the "Ctenophore" and "Arrow Worm" photos by publishing Essentials of Ocean Science (2d ed.) (Curley Aff. Ex. A, Rows 21, 23).  Suarez's uncontradicted affidavit establishes that Wiley did not actually publish a second edition of Essentials of Ocean Science. (See Suarez Aff. ¶ 12.)[19]

### C.   Wiley Should Be Granted Summary Judgment On Wu's Claims Regarding Textbooks Published By Its Foreign Subsidiaries

Wiley argues that it should be granted summary judgment on Wu's claims relating to the use of the photo "Deep Sea Angler Fish Luring A Prey" in the books Jacaranda Essentials Humanities 2 Worksheets, Jacaranda Primary Atlas (3d ed.)and Jacaranda Essentials Geography I Worksheets (Dkt. No. 42: Curley Aff. Ex. A, Rows 42-44), as well as the photo "Kelp Forest" in Visualizing the Environment (Canadian ed.) (Curley Aff. Ex. A, Row 47), because those titles were published by its foreign subsidiaries John Wiley & Sons Australia Ltd. and John Wiley & Sons Canada Ltd.  (See Dkt. No. 38: Wiley Br. at 13; Dkt. No. 39: Wiley 56.1 Stmt. ¶ 22.)  Suarez has testified has that Wiley did not publish any of these books (Dkt. No. 40: Suarez Aff. ¶¶ 8-11), and Wu's own evidence shows that the Canadian edition of Visualizing the Environment was published

---

[19]    Wiley admits that it used Wu's "Ctenophore" and "Arrow Worm" photos in Exploring Ocean Science (2d ed.), a book by the author of Essentials of Ocean Science that Wiley published in lieu of a second edition of that title.  (Dkt. No. 51: Wiley Reply Br. at 13; Dkt. No. 52: Wiley 56.1 Counter-Stmt. ¶ 88.)  Wu's claims relating to Exploring Ocean Science (2d ed.) appear separately at Rows 22 and 24.  (See Curley Aff. Ex. A, Rows 21-24.)  Wiley does not seek summary judgment with respect to Rows 22 and 24. (Wiley Reply Br. at 13-14 ("Wiley is not moving here on the rows related to the correct title.").)

26

by John Wiley Canada pursuant to an adaptation agreement (see  Dkt. No. 46: McCulloch Aff. ¶ 17 & Ex. 15: Adaptation Agreement).[20/]  Wu has identified no countervailing evidence to suggest that Wiley itself published these books.  (See Dkt. No. 44: Wu Opp. Br. at 20-25; Wu 56.1 Stmt. ¶¶ 21-22, 105-09.)[21/]

Wu argues that Wiley should be liable on a theory of vicarious or contributory infringement because  "merely distributing [his] photos to foreign publishers would violate any license that did not expressly permit Wiley to create foreign translations, adaptations, or editions," and that "if Wiley is correct that these are 'distinct corporate entities,' then merely sending copies of [his] photos to these companies infringed [his] copyrights because none of Wiley's licenses authorized distributing or sublicensing copies of [his] photos under any circumstances." (Wu Opp. Br. at 20.)  Wu also claims that Wiley "can be held liable for the misconduct of other companies, particularly its own subsidiaries," if that conduct is fairly traceable to Wiley.  (Wu Opp. Br. at 21.)

Courts in this Circuit routinely address contributory and vicarious copyright infringement as separate claims from direct infringement.  See, e.g., Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 28-29 & n.5 (2d Cir. 2012); Smith v. BarnesandNoble.com, LLC, 12 Civ. 4374,

---

[20/]    Although the adaption agreement uses the title Visualizing Environmental Science (see McCulloch Aff. Ex. 15: Adaptation Agreement), both Wiley and Wu accept that it refers to the textbook at issue (see Dkt. No. 45: Wu 56.1 Stmt. ¶ 105; Dkt. No. 52: Wiley 56.1 Counter-Stmt. ¶ 105).

[21/]    Wu has presented evidence that "Deep Sea Angler Luring A Prey" may have appeared in chapter seven of Jacaranda Essentials Humanities 2 Worksheets in the form of Wiley's asset detail report. (See McCulloch Aff. Ex. 18: Asset Detail Report.)  Similarly, Wiley's GPS report refers to the use of "Deep Sea Angler Luring A Prey" in Jacaranda Essentials Humanities 2 Worksheets, Jacaranda Primary Atlas (3d ed.) and Jacaranda Essentials Geography I Worksheets. (See McCulloch Aff. ¶ 14 & Ex. 12: GPS Report.)  This may be proof that Wu's photographs appear in these textbooks, but neither report contradicts Suarez's testimony that Wiley did not publish the books.

27

2014 WL 4828107 at *1, *4 (S.D.N.Y. Sept. 23, 2014); Lefkowitz v. John Wiley & Sons, Inc., 13

Civ. 6414, 2014 WL 2619815 at *3, *10-12 (S.D.N.Y. June 2, 2014); Assoc. Press v. Meltwater U.S.

Holdings, Inc., 931 F. Supp. 2d 537, 548, 570 (S.D.N.Y. 2013).   Indeed, in a court conference in

these consolidated cases, this Court denied Wu (and the other plaintiffs) permission to amend their

complaints to plead a claim for vicarious copyright infringement.  (Curley Aff. Ex. L: 13 Civ. 3314,

1/15/15 Hearing Tr. at 29-30.)  Wu's amended complaint alleges that Wiley infringed his copyrights

by "[e]xceeding the limitations of licenses by publishing Plaintiff's works in foreign editions of

publications without permission" (see Dkt. No. 29: Am. Compl. ¶ 28), thus pleading only direct

copyright infringement by Wiley (see Am. Compl. ¶¶ 32-46).  The amended complaint is devoid of

claims that Wiley contributed to or was otherwise responsible for alleged acts of copyright

infringement by others.  (See generally Am. Compl.)

Moreover, in order to establish liability for contributory or vicarious copyright

infringement, a plaintiff must first prove that direct infringement of its works occurred.  See, e.g.,

Thurman v. Bun Bun Music, 13 Civ. 5194, 2015 WL 2168134 at *7 (S.D.N.Y. May 7, 2015); Abbey

House Media, Inc. v. Apple Inc., 66 F. Supp. 3d 413, 419 (S.D.N.Y. 2014); MyPlayCity, Inc. v.

Conduit Ltd.,10 Civ. 1615, 2012 WL 1107648  at *14 (S.D.N.Y. Mar. 30, 2012), reconsideration

denied, 2012 WL 2929392 (S.D.N.Y. July 18, 2012); Laine v. Pride, 09 Civ. 3057, 2010 WL 199927

at *7 (S.D.N.Y. Jan. 19, 2010); Arista Records v. Mp3Board, Inc., 00 Civ. 4660, 2002 WL 1997918

at *3 (S.D.N.Y. Aug. 29, 2002).

Wu has presented no evidence of any direct infringement by John Wiley & Sons

Canada Ltd.  The only evidence Wu points to in support of his assertion that "Kelp Forest" appeared

in Visualizing the Environment (Canadian ed.) is Wiley's adaptation agreement with its Canadian

subsidiary.  (See Wu 56.1 Stmt. ¶105, citing McCulloch Aff. Ex. 15.)   Nothing in the adaptation

agreement supports Wu's argument; the adaptation agreement expressly <u>forbids</u> the use of any third

party images by John Wiley Canada unless it were to independently obtain the appropriate licenses.

(<u>See</u>  McCulloch Aff. Ex. 15: Adaptation Agreement § 1 (Wiley Canada "shall not include in the

Adaptation any text or illustrations from third parties that may be incorporated in the original [<u>i.e.</u>,

U.S.] work unless [Wiley Canada] obtains, at its own expense, written consent from such third

parties.").)   Wiley's adaptation agreement does not purport to sublicense the use of Wu's

photograph.[22/]

Beyond proving direct infringement, "'[t]o establish a claim for contributory

copyright infringement, a plaintiff must allege that the defendant "with knowledge of the infringing

activity, induced, caused, or materially contributed to the infringing conduct of another."'"  <u>BWP</u>

<u>Media USA Inc.</u> v. <u>Hollywood Fan Sites, LLC</u>, 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014) (quoting

<u>Gershwin Pub'g Corp.</u> v. <u>Columbia Artists Mgmt., Inc.</u>, 443 F.2d 1159, 1162 (2d Cir. 1971)); <u>accord,</u>

<u>e.g.</u>, <u>Arista Records, LLC</u> v. <u>Doe 3</u>, 604 F.3d 110, 117 (2d Cir. 2010); <u>Lefkowitz</u> v. <u>John Wiley &</u>

<u>Sons, Inc.</u>, 2014 WL 2619815 at *10; <u>Wolk</u> v. <u>Kodak Imaging Network, Inc.</u>, 840 F. Supp. 2d 724,

---

[22/]     Wu's reliance on <u>Panoramic Stock Images, Ltd.</u> v. <u>John Wiley & Sons, Inc.</u>, No. 12-cv-
          10003, 2014 WL 4344095 (N.D. Ill. Sept. 2, 2014), to support his argument that "Wiley had
          actual knowledge of the limits of its licenses so it cannot avoid liability by hiding its head
          in the sand and pretending it was not responsible" (Wu Opp. Br. at 21) is misplaced.  The
          <u>Panoramic Stock Images</u> court found that "Wiley's standard form license agreement with
          third parties for translating its publications explicitly provides that no rights to use third-
          party content in the publication is granted by virtue of an agreement authorizing the
          translation, and there is no evidence that any of the [plaintiff's] photographs were printed in
          any third party's translation of any" of the publications at issue.  <u>Panoramic Stock Images,</u>
          <u>Ltd.</u> v. <u>John Wiley & Sons, Inc.</u> at 2014 WL 4344095 at *4.  The court, however, denied
          Wiley summary judgment with respect to plaintiffs' contributory infringement claim
          because, <u>inter alia</u>, there was "deposition testimony [from] a Wiley Vice President that Wiley
          ships United States publications to its foreign subsidiaries to sell them internationally."
          <u>Id.</u> at *6-7.  Wu, on the other hand, does not claim (much less present any evidence) that
          Wiley shipped its American publications to its foreign subsidiaries for unlicensed sale
          overseas.  (<u>See generally</u> Wu Opp. Br.)

750 (S.D.N.Y. 2012), aff'd sub nom., Wolk v. Photobucket.com, Inc., 569 F. App'x 51 (2d Cir.

2014); Brought to Life Music, Inc. v. MCA Records, Inc., 02 Civ. 1164, 2003 WL 296561 at *2

(S.D.N.Y. Feb. 11 2003).  Contributory liability thus "exists if the defendant engages in personal

conduct that encourages or assists the infringement." Arista Records LLC v. Doe 3, 604 F. 3d at 118

(quotation omitted); see also, e.g., Lefkowitz v. John Wiley & Sons, Inc., 2014 WL 2619815 at *10.

This requirement "will not be satisfied by allegations that a defendant merely

provided the means to accomplish an infringing activity." Lefkowitz v. John Wiley & Sons, Inc.,

2014 WL 2619815 *11 (quotation & alterations omitted); accord, e.g., BWP Media USA Inc. v.

Hollywood Fan Sites, LLC, 69 F. Supp. 3d at 356-57; Wolk v. Kodak Imaging Network, Inc., 840

F. Supp. 2d at 750; Brought to Life Music, Inc. v. MCA Records, Inc., 2003 WL 296561 at *2.

"'Rather, participation in the infringement must be substantial and the authorization or assistance

must bear a direct relationship to the infringing acts, and the contributory infringer must have acted

in concert with the direct infringer.'" BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F.

Supp. 3d at 357.[23/] Wu has presented no evidence that Wiley provided its subsidiaries with his

photographs, much less that it authorized or assisted them.  (See Wu 56.1 Stmt. ¶¶ 105-11.)

Furthermore, although Wu's photographs may have appeared in textbooks published by Wiley

Australia (see page 26 n.21 above), that alone does not demonstrate that Wiley authorized or assisted

in their use in those textbooks.  Similarly, Wiley's adaptation agreement with Wiley Canada makes

clear that Wiley did not authorize Wiley Canada to use any of Wu's photographs, and in any event,

Wu has presented no evidence that Wiley Canada used his photographs at all.  (See pages 27-28

---

[23/]    See also, e.g., Arista Records, LLC v. Doe 3, 604 F.3d at 118; Lefkowitz v. John Wiley &
Sons, Inc., 2014 WL 2619815 *11;  Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d
at 750; Brought to Life Music, Inc. v. MCA Records, Inc., 2003 WL 296561 at *2.

30

above.)  Thus, even if Wu could prove Wiley provided its subsidiaries with textbooks containing

Wu's photos, he cannot establish contributory infringement.

Accordingly, Wiley should be granted summary judgment on Wu's claims related to

"Deep Sea Angler Luring A Prey" in Jacaranda Essentials Humanities 2 Worksheets, Jacaranda

Primary Atlas (3d ed.) and Jacaranda Essentials Geography I Worksheets (Curley Aff. Ex. A, Rows

42-44), as well as "Kelp Forest" in Visualizing Environmental Science Canadian Ed. (Curley Aff.

Ex. A, Row 47).[24]

---

[24]  Wu has presented evidence that John Wiley & Sons Australia Ltd. may have published
"Deep Sea Angler Luring A Prey" in chapter seven of Jacaranda Essentials Humanities 2
Worksheets in the form of Wiley's asset detail report. (See page 26 n.21 above.)  Similarly,
Wiley's GPS report refers to the use of "Deep Sea Angler Luring A Prey" in Jacaranda
Essentials Humanities 2 Worksheets, Jacaranda Primary Atlas (3d ed.) and Jacaranda
Essentials Geography I Worksheets. (See page 26 n.21 above.)  This raises a factual dispute
regarding whether Wiley Australia published Wu's photographs in these textbooks.
Nevertheless, because Wu did not plead any theories of secondary copyright liability and
was specifically denied leave to amend his complaint to add them (see pages 26-27 above),
Wiley should be granted summary judgment with respect to these claims.

Wu also argues that Wiley's "intentional and knowing illegal conduct requires" piercing the
corporate veil because "Wiley plainly committed a 'wrong' by having foreign subsidiaries
publish books and translations that Wiley knew it was not permitted to do itself under its
licenses."  (Wu Opp. Br. at 23.)  "While courts occasionally 'pierce the corporate veil' and
ignore a subsidiary's separate legal status, they will do so only in extraordinary
circumstances, such as where the corporate parent excessively dominates its 'subsidiary in
such a way as to make it a "mere instrumentality" of the parent.'"  Balintulo v. Ford Motor
Co., --- F.3d ----, No. 14-4104, 2015 WL 4522646 at *4 (2d Cir. July 27, 2015) (citing N.Y.
State Elec. & Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 224 (2d Cir. 2014)).  In support
of his argument, Wu points to numerous facts that he claims demonstrate a substantial,
ongoing relationship between Wiley and its subsidiaries, including that Wiley required its
subsidiaries to include certain notices on all printings, that Wiley tracked the publication
status and sales of the foreign adaptations of its books in its internal systems, and reports
revenue from its subsidiaries to the SEC and investors as additional publishing income.  (See
Wu Opp. Br. at 22.)  None of those facts, however, suggest that Wiley dominates its
subsidiaries so completely as to render them mere instrumentalities.

31

**D.**      **Claims Where Wu Has Presented No Evidence That Wiley Violated Its Licenses**

"A claim for infringement will fail if the challenged use of the copyrighted work is authorized by a license." Wu v. Pearson Educ. Inc., 10 Civ. 6537, 2013 WL 145666 at *4 (S.D.N.Y. Jan. 11, 2013) (citing Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998); see cases cited at page 22 above. Wiley argues that Wu has not presented evidence that Wiley violated its licenses for the use of the photo "Deep Sea Angler Fish Luring a Prey" in the first and third editions of General, Organic & Biological Chemistry. (Dkt. No. 38: Wiley Br. at 16; Dkt. No. 42: Curley Aff. Ex. A, Rows 38, 40-41.) The print run limits for these licenses were 25,000 for the first edition and 100,000 for the third edition. (Dkt. Nos. 45 & 52: Wu 56.1 Stmt. & Wiley 56.1 Counter-Stmt. ¶¶ 94-95, 10-01; Curley Aff. Ex. E: Wu Invoice No. 7580; Curley Aff. Ex. F: Peter Arnold Invoice No. 2001159.) Wiley's print runs for these books were 22,926 and 29,157 (Dkt. No. 40: Suarez Aff. ¶¶ 13-14), both within the licensed print run limits.

In response, Wu claims that "[b]ecause Defendant's Motion addresses only print-run claims, it fails to carry its burden to show that there is no genuine issue of fact as to whether any other license restrictions were violated." (Dkt. No. 44: Wu Opp. Br. at 19.) Wu asserts that the "evidence shows that Wiley violated each of its licenses to use Wu's photos in all three editions of its General, Organic & Biological Chemistry series (Rows 38-41), including the electronic and language restrictions for the First and Third Editions." (Wu Opp Br. at 19.) Wu is mistaken that Wiley addresses only the size of the print runs. According to Suarez's testimony, cited by Wiley in its brief, Wiley did not distribute either edition in any language other than English. (Wiley Br. at 16; Suarez Aff. ¶¶ 13-14.) Wu has offered no evidence to the contrary.[25] Similarly, Wiley's licenses

_____

[25]      The only evidence Wu cites to support his claim that Wiley "[a]uthorized multiple foreign
(continued...)

for these images included worldwide English language rights for publication in both text and electronic forms.  (See Wu 56.1 Stmt. & Wiley 56.1 Counter-Stmt. ¶¶ 102-03; Curley Aff. Ex. E: Wu Invoice No. 7580; Curley Aff. Ex. F: Peter Arnold Invoice No. 2001159.)  Thus, even if Wiley used Wu's photos in an electronic edition of the textbook, it had the license to do so.

Similarly, Wu has presented no evidence to show that Wiley infringed his copyrights in the photos "Deep Sea Angler Luring a Prey" by publishing Microbiology Principles and Explorations (5th ed.) and "Kelp Forest" in Environment with 2002 World Population Data Sheet. (Curley Aff. Ex. A, Rows 45, 53.)  Wiley does not dispute that those photos appear in the books alleged.  (See Wiley Br. at 17; Dkt. No. 51: Wiley Reply Br. at 14; Wiley 56.1 Counter-Stmt ¶¶ 31-33.)  Instead, Wiley asserts that usage was within the scope of its licenses from Wu's agents Getty Images and Peter Arnold.  (See Wiley Reply Br. at 14; Wiley 56.1 Counter-Stmt ¶¶ 31-33.)  Wiley concedes that it "has been unable to locate a copy of the invoice" for its use of the photos.  (Dkt. No. 41: Patelli Aff. ¶¶ 3-4.)

Wu argues that "[b]ecause Wiley has asserted license as an affirmative defense, it bears the burden of coming forward with evidence to show the existence of a valid license."  (Wu Opp. Br. at 17.)  Wu's own complaint, however, concedes that the photo agencies Getty Images and

---

[25]/     (...continued)
translations" in violation of the language restrictions contained in its licenses for these images (Dkt. No. 45: Wu 56.1 Stmt. ¶ 79) are adaptation agreements between Wiley and a Chinese publisher for Chinese editions of General Organic, and Biological Chemistry, An Integrated Approach (see Wu 56.1 Stmt. ¶ 79; Dkt. No. 46: McCulloch Aff. Exs. 8 & 9: Adaptation Agreements).  Those adaptation agreements, however, do not permit the use of any photos from the English editions being translated.  (See McCulloch Aff. Exs. 8 & 9: Adaptation Agreements ¶ 1(c) ("This grant of rights shall not apply to any text, illustrations or supplemental material from other sources that may be incorporated in the original Work."))  Thus, they do not prove use, and as discussed above, do not prove contributory infringement.

33

Peter Arnold, respectively, issued Wiley licenses for the challenged uses of these photos.  (See Dkt.

No. 29: Am. Compl. ¶ 24 & Ex. 1.)  "[A]llegations in the Complaint are judicial admissions to which

Plaintiffs are bound."  Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014).[26/]

Because Wu has conceded the existence of licenses for these photos, he has the burden of

demonstrating that Wiley infringed them.  See, e.g., Tasini v. New York Times Co., 206 F.3d 161,

171 (2d Cir. 2000) ("Where the dispute is only over the scope of the license, by contrast, 'the

copyright owner bears the burden of proving that the defendant's copying was unauthorized.'"

(quoting Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995), cert. denied, 517 U.S. 1240,

116 S. Ct. 1890 (1996)), aff'd, 533 U.S. 483, 121 S. Ct. 425 (2001);[27/] see cases cited at page 22

above.  Wu has presented no such evidence.  (See generally Wu Opp. Br.; Wu 56.1 Stmt.)  Wiley

therefore should be granted summary judgment with respect to Wiley's claims regarding the photos

"Deep Sea Angler Luring a Prey" in Microbiology Principles and Explorations (5th ed.) (see Curley

Aff. Ex. A, Row 45), and "Kelp Forest" in Environment with 2002 World Population Data Sheet

(see Curley Aff. Ex. A, Row 53).

## V.   CLAIMS WHERE WU HAS RAISED A FACTUAL ISSUE

Wiley should not be granted summary judgment regarding the use of Wu's photos

"Luminescent Jellyfish," "Australian Wrasse (Cleaner Fish)," and "Mature Emperor Fish" in Biology

---

[26/]    Accord, e.g., Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybran, LLP, 322 F.3d 147, 167 (2d Cir. 2003); Funnekotter v. Ag. Dev. Bank of Zimbabwe, 13 Civ. 1917, 2015 WL 3526661 at *8 (S.D.N.Y. June 3, 2015); Shiflett v. Scores Holding Co., 13 Civ. 4076, 2014 WL 1413618 at *1 n.1 (S.D.N.Y. Apr. 10, 2014), aff'd, 601 F. App'x 28 (2d Cir. 2015); Clarke v. JPMorgan Chase Bank, N.A., 8 Civ. 2400, 2010 WL 1379778 at *14 (S.D.N.Y. Mar. 26, 2010).

[27/]    Accord, Wu v. Pearson Educ. Inc., 2013 WL 145666 at *4; Canal+ Image UK Ltd. v. Lutvak, 773 F. Supp. 2d 419, 445-46 (S.D.N.Y. 2011)

34

Fundamentals (2d ed.).  (See Dkt. No. 42: Curley Aff. Ex. A, Rows 9-10, 13 & 16.)

Wiley argues that it did not publish Biology Fundamentals (2d ed.).  (See Dkt. No. 38: Wiley Br. at 12, citing Dkt. No. 40: Suarez Aff. ¶ 7; see also Dkt. No. 46: McCulloch Aff. Ex. 13: 2/13/15 Chart of Claims & Defenses.)  Suarez testified Wiley did not print or distribute any book with this title, and Wiley's print run history report does not contain any entries for Biology Fundamentals (2d ed.).  (Suarez Aff. ¶ 7.)  Wiley's GPS report, however, identifies all three photographs as having been used in Biology Fundamentals (2d ed.).  (See McCulloch Aff. Ex. 12: GPS Report.)  Wiley therefore should be denied summary judgment on Wu's claims that Wiley infringed his copyrights by using "Luminescent Jellyfish," "Australian Wrasse (Cleaner Fish)," and "Mature Emperor Fish" in Biology Fundamentals (2d ed.).  (Curley Aff. Ex. A, Rows 9-10, 13, & 16.)

## CONCLUSION

For the reasons discussed above, Wiley's motion for summary judgment (Dkt. No. 37) should be GRANTED in part.  Wiley should be granted summary judgment on Wu's claims in Rows 2, 14, 21, 23, 38, 40-47 and 53-55 of Curley Affidavit Ex. A (Dkt. No. 42). Wiley's summary judgment motion should be DENIED on Wu's remaining claims (including specifically those in Rows 9-10, 13, and 16), although the statute of limitations will bar Wu from recovering damages for any of his surviving claims to the extent that infringement occurred prior to May 16, 2010.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable

35

Alvin K. Hellerstein, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Hellerstein (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:        New York, New York
              September 10, 2015

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge


Copies ECF to:        All Counsel
                      Judge Hellerstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September, 2015, I caused a true and correct copy of

the foregoing **NOTICE OF SUPPLEMENTAL AUTHORITY** to be filed with the Court through

the ECF system, which generates an electronic notice of service by email to the following counsel of

record:

> Danial A. Nelson, Esq.
> Kevin P. McCulloch, Esq.
> NELSON & McCULLOCH LLP
> 155 East 56th Street
> New York, N.Y. 10022
> (212) 355-6050
> Email – dan@nmiplaw.com; kevin@nmiplaw.com
>
> *Counsel for Plaintiff Laura Dwight*

*/s/ Robert Penchina*