IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURA DWIGHT,<br><br>    *Plaintiff*,<br><br>    *v*.<br><br>JOHN WILEY & SONS, INC.,<br><br>    *Defendant*. | Case No. 14-cv-06742 (VSB) (AJP)<br><br>Hon. Vernon S. Broderick<br>Hon. Andrew J. Peck<br><br>ECF Case<br>Electronically Filed |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff, by and through undersigned counsel, hereby submits as supplemental persuasive authority in further support of Plaintiff's opposition to the motion for partial summary judgment filed by John Wiley & Sons, Inc. ("Wiley") the attached November 4, 2015 Report and Recommendation of Magistrate Judge Ferraro for the United States District Court for the District of Arizona in *Degginger v. McGraw-Hill Global Education Holdings LLC*, No. CV-14-02429 (D. Ariz.) (the "*Degginger* Report"). A true and correct copy of the *Degginger* Report is attached hereto.

Considering a statute-of-limitation defense based on both actual knowledge and constructive knowledge through "inquiry notice" raised by a defendant textbook publisher on a motion for summary judgment, the Arizona Court held that the plaintiff's knowledge of infringements in the textbook publishing industry generally is not sufficient to trigger "inquiry notice." (*Degginger* Report at 9-10.) The Arizona Court also held that, even assuming *arguendo* that knowledge of the plaintiff's counsel could be imputed to the plaintiff, the plaintiff's claims still did not accrue prior to suit because there was no evidence in the record that plaintiff's counsel "had any particularized information about MHE infringing [the plaintiff's] work" in the

specific books at issue in the complaint. (*Id.* at 11.) The Arizona Court also held that actual knowledge of specific prior infringements by the defendant was not sufficient to trigger the statue of limitations for all claims in suit because "[a] reasonable person could believe that because [the defendants] had previously provided notice of the improper use, they would continue to do so and no further inquiry was necessary." (*Id.* at 7.)

Given the identity of the statute of limitations arguments raised by Wiley in this action and the textbook publisher defendant in *Degginger*, the recommended legal conclusions in the *Degginger* Report provide presuavive suport for Plaintiff's opposition here.

Dated: November 6, 2015

By:  s/ *Danial Nelson*

Danial A. Nelson
Kevin P. McCulloch
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
dan@nmiplaw.com
kevin@nmiplaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phil Degginger,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>McGraw-Hill Global Education Holdings LLC, and McGraw-Hill School Education Holdings, LLC,<br><br>　　　　　Defendants. | No. CV-14-02429-TUC-DCB (DTF)<br><br>**REPORT AND RECOMMENDATION** |

　　　　Pending before the Court is Defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC's (MHE) Partial Motion for Summary Judgment with accompanying statement of facts. (Docs. 65-67.) Plaintiff Phil Degginger responded to the motion and statement of facts. (Docs. 74-75.) MHE replied and submitted a notice of supplemental authority, to which Plaintiff responded. (Docs. 79, 80, 86.) Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Ferraro for a report and recommendation. Magistrate Judge Ferraro heard oral argument on October 7, 2015, after which he took the matter under advisement. (Doc. 90) The Magistrate recommends the District Court, after its independent review of the record, enter an order denying Defendants MHE's motion for partial summary judgment.

# FACTS

Plaintiff Degginger is a photographer who makes stock photos available for use by others, directly or through photo agents. His father, Ed Degginger, was a photographer who made stock photos available for use by others, directly, through Color-Pic, Inc., and through photo agents. Over the course of more than 40 years, Color-Pic issued tens of thousands of licenses to hundreds of licensees. (Doc. 75, Degginger Decl. ¶ 2.) Degginger is the purported owner of the copyrights to all of the photographs in this case, whether authored by Degginger or his father (now deceased). (Doc. 88 ¶ 7.)

Defendants MHE are publishers of educational textbooks. The standard practice in the stock photography industry is for customers (publishers) to request and pay for a license, represented by an invoice, before using a photograph. (Doc. 75, Degginger Decl. ¶ 4.)

Between 1999 and 2010, Degginger, his father, and their agents (Animals Animals/Earth Scenes (AAES) and Photo Researchers) became aware of numerous instances in which MHE used their photographs without permission. Each time, a fee was negotiated for a retroactive license. Ed Degginger never sued MHE; they settled every issue he raised with them. (Doc. 67, Ex. CB1 at 153.) Degginger testified that he first began investigating infringement by MHE in December 2012. (Doc. 67, Ex. CB1 at 167-70; Ex. CB102, row 241.) Nancy Carrizales of AAES stated that after becoming aware that MHE used photos from AAES without payment, she did not take steps to determine if MHE had done so on other occasions because she trusted them and had no reason to expect that had occurred. (Doc. 67, Ex. CB31 at 50-51, 68-69.) Carrizales stated that it would have been a "tremendous amount of work" to determine if there were unauthorized uses but she could have asked MHE if there were printing overruns. (*Id.* at 68-70.) Bob Zentmaier of Photo Researchers stated that his company did not investigate whether MHE had other overruns and liked to think they could trust MHE to report its usage. (Doc. 67, Ex. CB36 at 49-50.)

In May 2009, Degginger and his father retained the law firm of Harmon & Seidman LLC to pursue copyright claims involving Houghton Mifflin Harcourt (HMH). (Doc. 67, Ex. CB70; Doc. 75, Degginger Decl. ¶¶ 6-8, Harmon Decl. ¶¶ 7-9.) The fee agreement stated that Degginger was retaining Harmon & Seidman, LLC with respect to "copyright infringement and related claims." (Doc. 67, Ex. CB70.) Harmon & Seidman, LLC's representation of Degginger expanded to include claims against Pearson Education, Inc., later in 2009, John Wiley and Sons, Inc, in 2010, and MHE in 2012. (Doc. 75, Degginger Decl. ¶¶ 6, 9; Harmon Decl. ¶¶ 8-9.) While representing Degginger, Harmon & Seidman, LLC was representing numerous other plaintiffs suing textbook publishers for copyright infringement. (Doc. 67, Ex. CB71.)

Degginger testified in deposition that, prior to filing this case, he had no personal, specific knowledge that MHE had made an unauthorized or overuse of a particular photo. (Doc. 67, Ex. CB1 at 162-64.) Degginger's counsel had informed him, before they filed the case, that MHE had been found to have infringed regarding two textbooks in which his photographs appeared. (*Id.* at 163.) In this action originally brought on October 21, 2014, Degginger alleges MHE committed copyright infringement by unlawfully using 1407 photographs authored by him and his father. (Doc. 1; Doc. 88, Ex. 1.) Degginger and stock photography agencies AAES, Alamy, Bruce Coleman, Inc., Dembinsky Photo, and Photo Researchers (and others) sold MHE limited licenses to use some of these photographs. (Doc. 88, ¶¶ 3, 9.) Degginger alleges that some of MHE's use of his photographs exceeded that allowed by the license and some use was entirely unlicensed. (Doc. 88, ¶¶ 14, 15, 23, & Ex. 1.) The invoices connected to the licenses at issue in the case were issued between 1989 and August 2012. (Doc. 88, Ex. 1.)

## DISCUSSION

**SUMMARY JUDGMENT STANDARD**

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Ins.*

*Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**COPYRIGHT STATUTE OF LIMITATIONS**

Copyright claims must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994). Infringement occurring more than three years before a suit is brought may be actionable if the "plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."[1] *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004).

**ANALYSIS**

MHE argues that infringing acts occurring more than three years before Degginger brought this case, that is prior to October 21, 2011, are barred by the statute of limitations.

---

[1] Although the parties agree on the law cited above, they articulate the legal standard for constructive knowledge differently from one another. Defendants contend that when a person possesses sufficient information to warrant an investigation into infringement ("inquiry notice"), and fails to investigate, the limitations clock begins to run at the time of inquiry notice. Plaintiff argues that when a person has inquiry notice, the clock does not begin to run until a reasonably diligent person could have discovered the infringement through investigation, whether the person actually investigates or not. The Court need not resolve this dispute because it finds there is a genuine issue of fact regarding whether Degginger's knowledge reached the level of inquiry notice.

- 4 -

**Actual Knowledge**

MHE argues Degginger had actual knowledge (imputed from his father and his agents)[2] of alleged infringements related to specific publications (as discussed more fully below in the section on constructive knowledge). There is no factual dispute about the truth of that proposition. However, Defendants have treated all the claims identically in their motion, choosing not to parse out the claims as to which Degginger had actual knowledge. Therefore, the Court does not have sufficient evidence to evaluate the extent of Degginger's inquiry at the time or how many infringing copies of each publication MHE disclosed as of any particular date.[3] Because there is a genuine issue of material fact, MHE is not entitled to summary judgment on the basis of actual knowledge as to any claims. *See Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp.2d 1027, 1035 (D. Alaska 2013) (finding a question of fact as to the limitations period even for infringement as to which the photographer had actual knowledge more than three years before filing suit because publisher failed to establish print runs).

**Constructive Knowledge**

MHE argues that Degginger had constructive knowledge in that he should have known of any infringements occurring prior to October 2011. The premise of Defendants' motion is that a reasonable person in Degginger's position would have investigated and discovered MHE's extensive infringement of his photographic work (as alleged in the complaint) because Degginger knew that: MHE infringed as to specific

---

[2] At least with respect to this motion, Degginger does not contest that the knowledge of his father and his photography agencies is imputed to him.

[3] Degginger alleges infringement for photographs included in books as to which his father or their agents previously reached a settlement for infringing use. As to *Biology, The Dynamics of Life* (1998 and 2002) and *Chemistry: Concepts and Applications* (2000 and 2002), Degginger has withdrawn the claims. However, other books as to which there was a settlement remain at issue in this litigation. Prior to filing suit, Degginger was unaware that his photo agencies had issued retroactive licenses as to any of his photographs. (Doc. 75, Degginger Decl. ¶ 15.) Additionally, at the time Degginger filed his response to the motion for summary judgment, his counsel averred that MHE had not produced all of its usage information. (Doc. 75, Harmon Decl. ¶ 15.) When Degginger possesses all the necessary information, the Court presumes he will withdraw any additional claims of which he had knowledge prior to October 21, 2011.

- 5 -

photographs (based on knowledge of his father and his agents); the stock photography industry was aware generally that publishers, including MHE, were infringing the work of photographers; and Degginger's counsel knew that MHE and other publishers committed infringement as to other photographers. The Court rejects Defendants' argument that such a determination can be made as a matter of law based on the record presently before the Court. There is a genuine issue of material fact as to whether a reasonable person should have learned of the infringement before October 2011.

Knowledge of Degginger and Photography Agencies

Between 1999 and 2010, Degginger became aware of the following infringing conduct by MHE:

- Between 1999 and 2002: Ed Degginger learned that MHE had used his photographs without his permission in *Biology, The Dynamics of Life* (editions 1995, 1998, 2000 and 2002) (*BDOL*); *Science Voyages 2000*; *Chemistry, Concepts and Applications* (editions 2000 and 2002); *Physics, Principles and Problems*; and *Earth Science*. (Doc. 67, Ex. CB9 at M-H_Degginger 000369 (*BDOL* 1998); Exs. CB9, CB17 (*BDOL* 2000, 2002); Ex. CB10 (*BDOL* 1995, 1998); Ex. CB15 (*BDOL* 2002); Exs. CB22-CB25 (*Science Voyages*); Exs. CB26, CB27 (*Chemistry* (2000, 2002), *Physics*); Ex. CB29 (*Earth Science*).)

  In each of these cases, Degginger and MHE reached a monetary agreement for the use of his photographs. (Doc. 67, Ex. CB13 (*BDOL* 1998); Ex. CB22-CB25 (*Science Voyages*); Ex. CB28 (*BDOL*, *Chemistry*, *Physics*); Ex. CB29 (*Earth Science*).)

- Between 1999 and 2010, AAES and/or Photo Researchers, agents of Degginger and his father, learned that MHE had used their photos, including photos by Ed Degginger, without permission in *BDOL* (multiple editions); *Science* (2000); *Mathematics* (2002); *Window on Humanity* (2004); *Physical Science*; *Physics, Principles and Problems*; *Earth Science*; *Health and Wellness* (2004, 2006, 2008, and state editions); and *Everyday Math* (2007). (Doc. 67, Exs. CB39-41 (*BDOL* 1998); Exs. CB61-63 (*Science*, *Mathematics*, *Window on Humanity*); Exs. CB42, CB43, CB31 at 60-61, CB44-55 (*BDOL*, *Physical Science*, *Physics*, *Earth Science*, and *Science*); Ex. CB58 (*Health and Wellness* (2004)); Ex. CB60 (*Health and Wellness* (2005, 2008, state editions), *Everyday Math*).

  In each of these cases, AAES issued a retroactive license for use of the photographs. (Doc. 67, Exs. CB39-41 (*BDOL* 1998); Exs. CB61-63 (*Science*, *Mathematics*, *Window on Humanity*); Exs. CB31 at 60-61, CB44-55 (*BDOL*, *Physical Science*, *Physics*, *Earth Science*, and *Science*); Ex. CB31 at 80-81, Ex. CB59 (*Health and Wellness* (2004)); Ex. CB60 (*Health and Wellness* (2005, 2008, state editions), *Everyday Math*).

Whether this information was sufficient to cause a reasonable person in Degginger's shoes to conduct further investigation is a question of fact. MHE has

highlighted a series of instances in which Degginger or his agent became aware of MHE's improper uses of his work. However, Color-Pic issued many thousands of licenses. (Doc. 75, Degginger Decl. ¶ 2.) At issue in this case are invoices to MHE spanning 23 years. Degginger attested that only MHE, and not the licensor, would know if MHE violated the license by exceeding a print quantity or some other licensing term. (Doc. 75, Degginger Decl., ¶¶ 5, 10, 14.)

For most of the license violations involving the photo agencies and for a few involving Ed Degginger, MHE notified the licensor it had exceeded the license. (Doc. 67, Exs. CB26, CB42, CB43, CB58, CB60.) A reasonable person could believe that because MHE had previously provided notice of the improper use, they would continue to do so and no further inquiry was necessary. *See, e.g., Frerck v. Pearson Educ., Inc.*, 63 F. Supp.3d 882, 887 (N.D. Ill. 2014) (finding that no reasonable juror could conclude that a publisher's "voluntary and proactive" notice to a photographer of overruns as to one series of books required investigation for further wrongdoing); *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp.2d at 1035 (finding single disclosure by publisher of overprinting did not provide notice to photographer that numerous other licenses had been exceeded); *DRK Photo v. The McGraw-Hill Companies, Inc.*, CV12-08093-PCT-PGR, 2013 WL 1151497, at *2 (D. Ariz. Mar. 19, 2013) (publisher's voluntary disclosure of 13 print overruns could rationally be interpreted as evidence that overruns were not being concealed and did not constitute notice of other infringement). Here, MHE alerted Degginger to more instances of its infringing conduct then the publishers in the cases cited above. The limited disclosures in *Alaska Stock* and *Frerck* are likely one of the reasons the courts found, as a matter of law, that the defendants had not proven a violation of the statute of limitations. Certainly, in light of the current record, the Court would not preclude Defendants from presenting a statute of limitations defense to the jury. However, the Court cannot conclude that Degginger was aware of so many unauthorized uses that the Court can find constructive knowledge as a matter of law on the pending motion.

1    Defendants argue that Ed Degginger's reliance upon MHE to disclose any
2    infringement was unreasonable. They point out that Ed Degginger did not trust MHE as
3    illustrated by his letters to them in 2001.[4] However, each time Degginger or his agents
4    became aware of MHE's possible infringement, MHE provided the infringement details
5    and paid him. In addition, Ed Degginger conducted some monitoring of MHE's photo
6    credits and alerted his agents when he suspected improper use of his photographs. (Doc.
7    67, Exs. CB29, CB30, CB31 at 57-58.) Whether or not Plaintiff's conduct sufficiently
8    discharged his duty to investigate is a genuine issue of fact.

The cases relied upon by MHE at oral argument and in its papers involved substantially different facts. In each of those cases the infringement arose out of a single license or copyrighted work. *See Wood v. Santa Barbara*, 705 F.2d 1515, 1521 (9th Cir. 1983) (one group of photographs for a single advertising campaign); *Fahmy v. Jay-Z*, 835 F. Supp.2d 783, 789-90 (C.D. Cal. 2011) (one copyrighted song); *Experexchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2009 WL 3837275, at *2-3, 20 (N.D. Cal. Nov. 16, 2009) (one piece of software and one license). Not so here. In the instant case, there are 1407 photographs, more than two hundred licenses, and dozens of alleged unlicensed uses, spanning two decades.

In contrast to the cases cited by MHE, when Plaintiff discovered an infringing use, MHE provided the information on the breadth of the infringement and paid compensation. Each publication involved a new license and notice as to the violation of one license did not provide notice to investigate every other license. To the extent there were other infringements in the same publications or later editions that Degginger did not learn about, a jury may find the claim should be barred. However, MHE did not present

---

[4] In September 2001, after Ed Degginger discovered that MHE had published BDOL (2002) using his photographs without permission, he wrote, "I think it is outrageous that your company continues to publish books without first getting the necessary permissions . . . . Some things never change." (Doc. 67, Ex. CB15.) The following month, Ed Degginger wrote to MHE regarding unauthorized use of his photographs in BDOL (2000 and 2002) and stated that his quarrel with the company was due to "their propensity for publishing our work without permission . . . . repeatedly." (Doc. 67, Exs. CB9, CB17.)

- 8 -

sufficient evidence regarding the extent of Degginger's knowledge to conclude as a matter of law they are entitled to a judgement. Thus, there remains a question of fact whether the information Degginger possessed warranted additional investigation about particular publications or all publications by MHE.

### Industry Knowledge

In September and November 1999, Jim Pickerell, author of a stock photo industry newsletter, published articles alerting photographers to MHE's unlicensed re-use of work in *BDOL 1998* and *Science Voyages 2000*. (Doc. 67, Exs. CB18, CB20, CB21.) Pickerell published numerous other articles stating that textbook publishers were systematically making unauthorized use of photographs. (Doc. 67, Exs. CB76, CB79-82, CB92, CB93.) There is no evidence Degginger or his father read these articles. (Doc. 75, Harmon Decl., Ex. 4 at 154-55.) AAES and Photo Researchers received this newsletter but there is no evidence that employees read any of these articles. (Doc. 67, Ex. CB31 at 51-53; Ex. CB36 at 57-59.) Degginger testified that he did not know any details about other photographers' lawsuits against MHE or whether they involved publications in which his photos were included. (Doc. 75, Degginger Decl. ¶ 10.)

Numerous courts have rejected the idea that general knowledge of textbook companies committing infringement or of a textbook company infringing another photographer's work constitutes constructive discovery. *See Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746(AKH), 2015 WL 5254885, at *6 (Sept. 10, 2015 S.D.N.Y.) (report and recommendation); *Bean v. John Wiley & Sons, Inc.*, CV11-08028-PCT-FJM, 2012 WL 1078662, at *3 (D. Ariz. Mar. 30, 2012) (finding no evidence that knowledge of one publisher's infringement should alert a photographer to another publisher's infringement); *Beasley v. John Wiley & Sons, Inc.*, 56 F. Supp.3d 937, 946 (N.D. Ill. July 21, 2014) ("News reports and articles about 'potential violations' by textbook publishers in general would not provide Beasley with any inkling that Wiley in particular was infringing his copyrights."); *Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, 2014 WL 3512991, at *6 (N.D. Ill. July 14, 2014) (general publishing industry knowledge

about infringement does not trigger a duty to investigate years of licenses; under such a rule "photographers likely would spend more money monitoring their licenses than they receive from issuing licenses.") This Court agrees – general industry awareness not directly attributable to Degginger or his agents does not amount to constructive knowledge.

### Knowledge of Counsel

MHE argues that information Plaintiff's lawyers may have learned while representing other clients should be imputed to Degginger. Plaintiff disputes this claim. The Court does not need to resolve this legal issue because it finds there remains a genuine issue of material fact even considering knowledge of counsel.[5]

Defendants rely primarily on the following facts. Beginning in 2006, Harmon & Seidman, LLC hired a private investigator to contact publishers, including MHE, about print runs and photograph usage, on behalf of *other clients*, not Degginger, Ed Degginger, Color-Pic, AAES or Photo Researchers.[6] (Doc. 67, CB74 at 13-17, 24-15, 53-54; Doc. 75, Harmon Decl. ¶ 4.) Prior to Degginger retaining Harmon & Seidman, LLC, that law firm had filed more than two dozen lawsuits against textbook publishers but not MHE. (Doc. 67, Ex. CB75.) On April 15, 2011, Harmon & Seidman, LLC brought its first suit against MHE on behalf of client DRK Photo. (Doc. 67, Ex. CB98.) Included in that lawsuit were infringement claims based on 15 or more MHE textbooks that are included by Degginger in the instant case. (*Compare id.*, Ex. A *with* Doc. 88, Ex. 1.)

The facts here are distinct from the *Wu* case upon which Defendants rely. In that case, the Court determined the plaintiff's infringement claims accrued on the date he received a letter from his counsel stating "send us any licenses you've granted to Wiley

---

[5] A judge in this district previously rejected the same argument by a different publisher. The Court declined to impute to one client knowledge counsel obtained about a publisher while representing a second client when (at that time) the first client had hired counsel only as to claims against a different publisher. *See Bean v. John Wiley & Sons, Inc.*, 2012 WL 1078662, at *3.

[6] That research revealed that MHE exceeded the print run as to two licenses. (Doc. 67, Ex. CB75.)

& Sons. We've got some dirt on them." *Wu*, 2015 WL 5254885, at *7. Here, what Defendants have established is that Harmon & Seidman, LLC was involved in copyright infringement litigation against numerous publishers and that it sued MHE on behalf of one client prior to October 2011. Defendants have not established that Harmon & Seidman, LLC had any particularized information about MHE infringing Degginger's work. Critically absent is any knowledge, prior to October 2011, that the photographs at issue in the instant suit were included in the books upon which DRK sued MHE. There is no evidence that Harmon & Seidman, LLC had physical copies of the books to have seen that Degginger's photographs were included in any particular book. Here, even imputing counsel's knowledge to Degginger, there remains a question of fact whether a reasonable person should have investigated as of April 2011, when the DRK suit was filed.

## CONCLUSION and RECOMMENDATION

Considering all of Degginger's knowledge, whether imputed from his father, his agents or his counsel, the Court finds a genuine issue of material fact regarding whether Degginger knew or should have known about MHE's alleged infringements prior to October 2011.

Based on the foregoing, the Magistrate Judge recommends that the District Court DENY Defendants' Partial Motion for Partial Summary (Doc. 65).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 4th day of November, 2015.

D. Thomas Ferraro
United States Magistrate Judge